UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRIENDS OF WARM MINERAL
SPRINGS, INC., et al.,

    Plaintiffs,

v.                                                       CASE NO. 8:13-cv-3236-T-23TGW

GINA MCCARTHY, et al.,

    Defendants.
_____/

**ORDER**

In a one count complaint (Doc. 45), Friends of Warm Mineral Springs and Juliette Jones sue three officials at the Florida Department of State and the City of North Port, Florida.  Under the "citizen suits" section of the Clean Water Act (CWA), the plaintiffs argue that the defendants violate the Clean Water Act by allowing "offsite" sand, fifty-five-gallon drums, and plastic sheeting to remain in Warm Mineral Springs — a 200-foot-deep, warm water, spring-fed pond in North Port.  Both the plaintiffs and the defendants move (Docs. 79, 81, 82) for summary judgment.

## BACKGROUND[1]

The parties agree that Warm Mineral Springs contains "offsite" sand, fifty-five-gallon drums, and plastic sheeting.[2] Although no party definitively establishes when or how the sand, the drums, or the sheeting appeared in the spring, the parties agree — and the cited materials confirm — that the sand, the drums, and the sheeting each appeared in the spring more than five years before the beginning of this action.[3]

The plaintiffs argue that the presence of the sand, the drums, and the sheeting in the spring is a continuing violation of the Clean Water Act, specifically 33 U.S.C. § 1311(a), which states, "Except as in compliance with this section and sections 1312,

---

[1] "When ruling on a summary judgment motion, the court must construe the facts and draw all rational inferences therefrom in the manner most favorable to the nonmoving party." *Georgia State Conference of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1343 (11th Cir. 2015). However, under Rule 56(c)(3), on summary judgment, "[t]he court need consider only the cited materials." "Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited." *Pritchett v. Werner Enterprises, Inc.*, 2013 WL 6909892 (S.D. Ala. Dec. 31, 2013) (Steele, J.). Nonetheless, this action's material facts are undisputed.

[2] Although the witnesses and parties allude to other foreign objects in the spring, the complaint alleges only the sand, the drums, and the sheeting.

[3] William Delp, the corporate representative for Friends of Warm Mineral Springs, asserts that he saw the State Department place the "[v]ast majority of the plastic sheeting" into the spring "a long time" ago, which he estimates as the "mid to late '80s." (Doc. 81-6 at 37:5–38:2; *see also* Doc. 81-1 ¶ 4; Doc. 81-2 ¶ 13) Delp also saw the sand intermittently dumped into the spring "from the late '80s to approximately 2005." (Doc. 81-6 at 28:9–10) Finally, Delp saw "at least three of the five [drums that he is] aware of" in the spring no later than 1989. (Doc. 81-7 at 21:6–19) (Elsewhere Delp states that he has seen only four drums in the spring. (Doc. 79-13 at 25:21–23)) Others who have seen drums in the spring have seen the drums since at least 1996. (Docs. 79-1 at 6 ¶ 21; 79-2 at 6 ¶ 19) One witness, Steve Koski, declares that Florida placed the drums in the water in the 1970s. (Doc. 79-7 at 4 ¶ 10, 6 ¶ 16) Attached to Koski's affidavit is a photograph that allegedly shows the drums that are now in the spring when they were on the bank of the spring in the 1970s. (Doc. 79-7 at 4 ¶ 10, 18)

1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." The parties agree that each of the sand, the drums, and the sheeting constitutes a "pollutant" under Section 1311(a)[4] and that someone "discharged" the sand, the drums, and the sheeting into the spring more than five years before the start of this action.[5] As a result, the defendants argue (among other things) that the applicable, five-year limitation bars this action.

## DISCUSSION

**1. Precedent**

"Legal claims brought under the [Clean Water Act] are subject to the general federal five-year statute of limitations established by 28 U.S.C. § 2462, wherein the claim is barred if suit is not brought within five years of the date the claim first accrues." *Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007) (discussing the Clean Air Act); *see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 451 F.3d 77, 88 n.14 (2d Cir. 2006)

---

[4] Under 33 U.S.C. § 1362(6), the Clean Water Act defines "pollutant" broadly; "[t]he term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." Thus, although no party argues that the sand, the drums, or the sheeting is toxic, the sand the drums, and the sheeting are nonetheless "pollutants" under the Clean Water Act.

[5] The word "discharge" commonly applies to a liquid. For example, one definition of "discharge" in *The American Heritage Dictionary* is "[t]o pour forth." However, "discharge" in the Clean Water Act encompasses the placement into water of any foreign object or substance, whether liquid or otherwise. Thus, although the expression is somewhat awkward, someone "discharged" the sand, the drums, and the sheeting into the spring.

(Walker, J.) ("[T]he CWA has a five-year statute of limitations, 28 U.S.C. § 2462 . . . ."); *c.f. United States v. Banks*, 115 F.3d 916, 918 (11th Cir. 1997) ("Because the CWA does not specify a limitations period for enforcement actions under . . . 33 U.S.C. § 1319, the default limitations provisions of 28 U.S.C. § 2462 apply . . . ."). Although "[a] claim first accrues on the date that a violation first occurs," *National Parks*, 502 F.3d at 1322, explains that:

> Under the continuing violations doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period. In determining whether to characterize a violation as "continuing," it is important to distinguish between the "present consequences of a one-time violation," which do not extend the limitations period, and "a continuation of a violation into the present," which does.

(citation omitted).

Because the parties agree that the sand, the drums, and the sheeting appeared in the spring more than five years before the start of this action (and therefore the plaintiffs' claim accrued more than five years before the start of this action), the five-year limitation bars this action unless the continued presence of the sand, the drums, and the sheeting constitutes a "continuing" violation of the Clean Water Act. *National Parks* demonstrates the correct method for determining whether a violation is "continuing." Considering a claim under the Clean Air Act, *National Parks*, 502 F.3d at 1322–23, explains:

> The plain language of the Act states, "No major emitting facility . . . may be constructed . . . unless" the proponent of the construction or

> modification fulfills the enumerated requirements. 42 U.S.C. § 7475(a). From this language, it follows that "violations of the preconstruction permitting requirements occur at the time of construction, not on a continuing basis."

(citations omitted).

## 2. Applying *National Parks*

Section 1311(a) states, "Except as in compliance with [particular sections of the Clean Water Act], the discharge of any pollutant by any person shall be unlawful." Under the plaintiffs' theory, a violation of Section 1311(a) occurs continuously while a pollutant remains in water. Under the defendants' theory, a violation of Section 1311(a) occurs only at the introduction of a pollutant into water.

Citing (among other precedent) *National Parks* and conducting a similar analysis, *United States v. Rutherford Oil Corp.*, 756 F. Supp. 2d 782, 790–91 (S.D. Tex. 2010) (Rosenthal, J.), thoroughly and persuasively explains why Section 1311(a) forbids the introduction of a pollutant into water, not the continuing presence of a pollutant in water:

> To determine whether an ongoing obligation is imposed, courts look first to the language of the statute. "Where a statute is unambiguous and there is no room for interpretation or construction of [a] provision, [a court] cannot circumvent its clear words." Courts have split as to whether the CWA creates a continuing obligation to remedy the effects of violations. The section of CWA at issue prohibits the "discharge of any pollutant," "[e]xcept in compliance with" with certain other sections of the CWA. 33 U.S.C. § 1311(a). For the purposes of this case, the CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A). "Addition" can mean either "the act or process of adding" or "the result of adding." Section 1311(a)'s use of the phrase "in compliance with"

> and the placement of "by any person" behind the word "discharge" point[] toward the former definition, which indicates a discrete action, instead of the result of that action. Ordinarily, one speaks of an action done "by a person," "in compliance with" rules. This ordinary meaning is dispositive. Once the violator stops adding a pollutant in violation of a permit, the violation itself is over. What remains are the effects of the violation, but absent a continuing obligation that is itself violated, the effects are not themselves violations. A discharge in violation of the obligation at issue under § 1311(a) is not a continuing violation on the basis that the discharger fails to remedy its effects.

(citations and footnotes omitted). In short, Section 1311(a) prohibits only the release of a pollutant, not the presence of a pollutant. Thus, in this action, the release of the sand, the drums, and the sheeting into the springs (not their presence in the springs) constitutes the violation of Section 1311(a). Because the sand, the drums, and the sheeting were released into the springs more than five years before the start of this action, the five-year limitation in 28 U.S.C. § 2462 bars this action.

### 3. The Plaintiffs' Response

In response, the plaintiffs cite *Atlantic States Legal Foundation, Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 n.20 (N.D.N.Y. 2001) (Scullin, J.), and a string of citations from *Hamelin* to argue that the presence in the spring of the sand, the drums, and the sheeting nonetheless constitutes a continuing violation of Section 1311(a). However, *Hamelin*, which resolved a motion to dismiss, held only that "at this stage of the proceedings, doubts with respect to whether the allegations of continuing violations are a sham are resolved in favor of the citizen-plaintiff." (internal quotation marks omitted). For that narrow conclusion, *Hamelin* relies on the same string of citations

on which the plaintiffs rely — a string of citations that contains only unpersuasive or inapplicable precedent.

The string of citations (that the plaintiffs repeat exactly from *Hamelin*) states:

> *See Informed Citizens United, Inc. v. USX Corp.*, 36 F. Supp. 2d 375, 377 (S.D. Tex. 1999)[(Kent, J.)] (noting that several courts have found that "a violation is 'continuing' for purposes of the statute until illegally dumped fill material has been removed" (citations omitted)); *Sasser v. Administrator, United States E.P.A.*, 990 F.2d 127, 129 (4th Cir. 1993) [(Butzner, J.)] ("Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation." (citations omitted)); *United States v. Reaves*, 923 F. Supp. 1530, 1534 (M.D. Fla. 1996) [(Schlesinger, J.)] ("Defendant's unpermitted discharge of dredged or fill materials into wetlands on the site is a continuing violation for as long as the fill remains." (footnote omitted)); *United States v. Cumberland Farms of Conn., Inc.*, 647 F. Supp. 1166, 1183 (D. Mass. 1986) [(Young, J.)] ("A day of violation constitutes . . . every day Cumberland allowed illegal fill material to remain therein." (citations omitted)).

*Hamelin*, 182 F. Supp. 2d at 248 n.20.

The oldest cited opinion, *Cumberland Farms* relies on *United States v. Tull*, 615 F. Supp. 610 (E.D. Va. 1983) (Doumar, J.), and *Chesapeake Bay Foundation, Inc. v. Gwaltney*, 791 F.2d 304 (4th Cir. 1986) (Winter, J.). *Tull* considers a violation of an injunction requiring remediation, not a violation of the Clean Water Act. *Rutherford Oil*, 756 F. Supp. 2d at 791 (discussing *Tull*). The distinction is important because "a violator's refusal to comply with an injunction requiring remediation . . . [is relevant] in imposing a civil penalty . . . but does not suggest that the failure is itself a continuing violation of the underlying statute." *Rutherford Oil*, 756 F. Supp. 2d

at 792. Equally unhelpful, *Gwaltney*, 791 F.2d 304, is both inapposite and vacated by *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987).[6]

The second-oldest cited opinion, *Sasser* relies on *United States v. Ciampitti*, 669 F. Supp. 684, 700 (D.N.J. 1987) (Gerry, J.), and *Cumberland Farms*. *Ciampitti* relies on *Cumberland Farms*, which is rejected above.

The third-oldest cited opinion, *Reaves* relies on *Sasser*, which is rejected above, and on *Woodbury*, 1989 WL 106517, at *4 (E.D.N.C. April 25, 1989) (Britt, J.), which argues:

> [C]laims under the Clean Water Act do not accrue, for statute of limitations purposes, until reports documenting the violations have been filed with the EPA. This holding recognizes that it is virtually impossible for the public to discover violations until reports have been filed with the EPA. To hold that the statute of limitations begins when the violations actually occur, as opposed to when they are discovered, would impede, if not foreclose, the remedial effects of the statute.

---

[6] The parties in this action and the opinions in many other actions conflate the limitation in 28 U.S.C. § 2462 with the jurisdictional requirement in 33 U.S.C. § 1365(a). 28 U.S.C. § 2462 forbids liability under 33 U.S.C. § 1311(a) if more than five years has passed between the accrual of the claim and the filing of the complaint. Separately, 33 U.S.C. § 1365(a) "require[s for jurisdiction] that citizen-plaintiffs allege a state of either continuous or intermittent violation — that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57. The defendants argue that 28 U.S.C. § 2462 bars this action because the violation of 33 U.S.C. § 1311(a) (i.e., the discharge of the sand, the drums, and the sheeting into the spring) occurred more than five years before the plaintiffs sued. The plaintiffs respond that the existence in the spring of the sand, the drums, and the sheeting constitutes a "continuing" violation of 33 U.S.C. § 1311(a). *Gwaltney*, 791 F.2d 304, and *Gwaltney*, 484 U.S. 49, decide whether 33 U.S.C. § 1365(a) — not 28 U.S.C. § 2462 and not 33 U.S.C. § 1311(a) — requires a continuing violation. Neither *Gwaltney* explains the distinction. Thus, neither *Gwaltney* informs this action. *Rutherford Oil*, 756 F. Supp. 2d at 793 n.11 ("[*Gwaltney*, 791 F.2d 304,] never found that a continuing violation existed, as it determined that the citizen-suit provision did not require a continuing violation."). However, some opinions circumvent *Gwaltney*, 484 U.S. 49, (and 33 U.S.C. § 1365(a)) by arguing that a particular violation of 33 U.S.C. § 1311(a) is "continuing." *E.g., Hamelin*, 182 F. Supp. 2d 235. Those opinions can help determine whether a violation of 33 U.S.C. § 1311(a) is "continuing" under 28 U.S.C. § 2462.

(citations omitted). However, binding precedent rejects *Woodbury*'s holding that a claim accrues sometime after the violation — "[a] claim first accrues on the date that a violation first occurs." *Nat'l Parks*, 502 F.3d at 1322 (discussing the Clean Air Act).[7]

The most recent cited opinion, *Informed Citizens* relies on *Sasser*, *Reaves*, *Woodbury*, and *Tull*, each of which is rejected above.

In sum, each opinion cited by the plaintiffs eventually relies on *Gwaltney*, 791 F.2d 304, *Tull*, or *Woodbury*. *Gwaltney*, 791 F.2d 304, is vacated, *Tull* is inapposite, and *Woodbury* stands athwart Eleventh Circuit precedent.

## CONCLUSION

The parties agree, and the cited materials demonstrate, that each act of discharging sand, drums, or sheeting occurred more than five years before the start of this litigation. 33 U.S.C. § 1311(a) governs each act of discharging sand, drums, or sheeting. Accordingly, the limitation in 28 U.S.C. § 2462 bars this action under 33 U.S.C. § 1311(a). The defendants' motions (Docs. 79, 81) for summary judgment

---

[7] *Woodbury* contravenes not only *National Parks* but also *Edison v. Douberly*, 604 F.3d 1307, 1309 (11th Cir. 2010), which holds, "Courts are not free, and may not elect, to adopt other interpretations of statutory language and expand the reach of a statute merely because some might find it desirable." *Accord Rutherford Oil*, 756 F. Supp. 2d at 792 (rejecting *Woodbury* because "a court cannot use policy considerations to reach a result inconsistent with statutory language"); *see also Asociacion De Empleados Del Area Canalera v. Panama Canal Comm'n*, 329 F.3d 1235, 1240 (11th Cir. 2003) ("[P]olicy considerations like this must give way to the statute's plain language.").

Case 8:13-cv-03236-SDM-TGW   Document 97   Filed 05/08/15   Page 10 of 10 PageID 1377

are **GRANTED**, the plaintiffs' motion (Doc. 82) for summary judgment is **DENIED**.[8] The clerk is directed to enter judgment in favor of the defendants and against the plaintiffs, to terminate any pending motion, and to close this case.

ORDERED in Tampa, Florida, on May 8, 2015.

*[signature]*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[8] The last sentence of the plaintiffs' motion for summary judgment cites each attachment to the motion. Otherwise, for each fact allegation the motion for summary judgment either cites nothing or cites the complaint. Under Rule 56(c)(3), on summary judgment "[t]he court need consider only the cited materials." Further, an unsworn complaint is "not evidence and cannot be relied upon at the summary judgment stage." *Godman v. City of Largo, Fla.*, 2009 WL 1651524, at *9 (M.D. Fla. June 10, 2009) (Whittemore, J.); *accord First Benefits, Inc. v. Amalgamated Life In. Co.*, 2014 WL 6956693, at *3 (M.D. Ga. Dec. 8, 2014) (Treadwell, J.). Under Rule 56(e)(4), "[i]f a party fails to [comply with] . . . Rule 56(c), the court may . . . issue any . . . appropriate order."